IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JEFFERY RYAN LISENBY,           )
                                )
        Plaintiff,              )
                                )
        v.                      ) CIVIL ACTION NO.:  2:12-CV-375-TMH
                                )                    [WO]
SGT. BILL BLUE, *et al.*,        )
                                )
        Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff challenges the medical treatment provided to him on April 19, 2012, during his incarceration at the Covington County Jail. Specifically, Plaintiff complains that Defendants denied him adequate medical care when he suffered a seizure. Named as defendants are Sheriff Dennis Meeks, Captain Preston Hughes, Sergeant Billy Blue, and Nurse Annette Cain.  Plaintiff seeks monetary damages and injunctive relief for the alleged violations of his constitutional rights. *Doc. No. 1*.

In accordance with the orders of the court, Defendants filed answers, special reports, and supporting evidentiary material in response to the allegations in the complaint. In addition, Defendants argue that the complaint is due to be dismissed because Plaintiff failed to exhaust an administrative remedy available to him at the county jail as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  *Doc. Nos. 25 - Hughes Affidavit; Doc.*

*No. 26* at 12-13. Specifically, Defendants asserts that Plaintiff failed to pursue the administrative remedies available to him at the Covington County Jail regarding the claims in the complaint. *Id*.

The court informed Plaintiff that Defendants' special reports, may, at any time, be treated as a motion for summary judgment, and explained the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special reports filed by Defendants. This case is now pending on Defendants' motions for summary judgment. Upon consideration of the motions, Plaintiff's opposition to the motions, and the supporting and opposing evidentiary materials, the court concludes that Defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c),

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence to support some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the

---

changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff must produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir.

1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude

entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906

6

F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case.  In this

case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact to preclude

summary judgment.  *Matsushita*, 475 U.S. at 587.

### III.  DISCUSSION

*A. The Request for Injunctive Relief*

Plaintiff is no longer incarcerated at the Covington County Jail. The transfer or release

of a prisoner renders moot any claims for injunctive or declaratory relief.  *See  County of Los*

*Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780

(11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a

pending case or controversy regarding injunctive relief if unaccompanied by any continuing

present injury or real and immediate threat of repeated injury).  As it is clear from the

pleadings and records before the court that Plaintiff is no longer incarcerated at the county

jail, his request for injunctive  relief has been rendered moot.

*B.  The Medical Claim*[2]

_____

[2]Defendants state that at the time the events about which Plaintiff complains occurred, he was incarcerated at the Covington County Jail as a pretrial detainee. *Doc.  No. 25*.  The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee violate the Constitution.  *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause....").  For analytical purposes, however, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.  *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving

Plaintiff asserts that "corrections officers" ignored him when he was suffering a seizure on April 19, 2012. While plaintiff was seizing, incoherent, and non-responsive, jailers allegedly walked away "as if they didn't care." Plaintiff credits his two cellmates with helping him through his seizure. Plaintiff further complains that between the hours of 5:30 p.m. and 8:00 a.m. there are no medical personnel on duty. When Defendant Cain was notified of Plaintiff's medical issue at 1:30 a.m., she told correctional officials that there was no need for paramedics. (*Doc. No. 1*.)

To prevail in a suit based on an Eighth Amendment claim concerning medical attention, a prisoner must show, at a minimum, that prison or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97 (1976); *Aldridge v. Montgomery,* 753 F.2d 970, 972 (11th Cir.1985). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one so obvious that even a

---

prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court's reliance on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment when addressing Plaintiff's medical treatment claim is appropriate regardless of his status at the Covington County Jail at the time the incident about which he complains occurred. *See Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

lay person would easily recognize the necessity for a doctor's attention.

When seeking relief based on deliberate indifference of correctional or medical personnel, an inmate must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment . . Where the delay results in an

inmate's suffering 'a life-long handicap or permanent loss, the medical need is considered serious.' . . .An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill v. Dekalb Regional Youth Center,* 40 F.3d 1176, 1188 (11th Cir. 1994) (citations omitted).

Defendants filed affidavits addressing the allegations made by Plaintiff. According to Sgt. Blue, Correctional Officer Daniel King notified him at approximately 12:50 a.m. on April 20, 2012, that Plaintiff was having a seizure. Sgt. Blue, stationed in the control room at the time of the incident, could see Plaintiff through the window. He observed Plaintiff lying on his bed while Officer King held Plaintiff's head and body still to prevent him from hitting the bed frame. Officer King informed Sgt. Blue that Plaintiff had not lost control of his bodily functions and was not injured. Sgt. Blue called the medical unit and spoke with Nurse Cain, who was on call. Sgt. Blue relayed the incident regarding Plaintiff to Nurse Cain and inquired whether to call 911. After questioning Sgt. Blue about Plaintiff's seizure, Nurse Cain instructed him to monitor Plaintiff through the night and to call 911 if he had another seizure or if his condition did not quickly improve. Sgt. Blue informed Officer King to continue to hold Plaintiff still and report any change in his

condition.  Officer King remained with Plaintiff during the seizure, which lasted approximately five to ten minutes, and stayed in communication with Sgt. Blue. Approximately fifteen minutes after Sgt. Blue spoke with Nurse Cain, he went to Plaintiff's cell.  He noticed Plaintiff was no longer seizing, he could move his limbs, he acknowledged he could hear, and indicated he was doing fine.  Finding Plaintiff's condition dramatically improved, Sgt. Blue did not request additional medical attention.  He continued to monitor Plaintiff throughout the night, as did Officer King. *Doc. No. 25, Blue Affidavit; Doc. No. 26, Cain Affidavit and Exh. A.*

Nurse Williams examined Plaintiff on April 20, 2012, at 1:20 p.m.  She took his vital signs, noted his prescription for Dilantin and referred him to Dr. McWhorter.[3]  The same day, Dr. McWhorter ordered Plaintiff's Dilantin levels checked.  Plaintiff's Dilantin level was drawn on April 21, 2012, and found to be low. Dr. McWhorter ordered a repeat Dilantin level

---

[3]The evidence reflects that medical personnel were aware of Plaintiff's history of seizures. Plaintiff was booked into the Covington County Jail on March 31, 2012. His  booking medical log documented that he had the medical conditions of epilepsy and seizures. Nurse Dianne Williams prepared  Plaintiff's medical staff screening form on April 1, 2012. She noted that Plaintiff was taking Dilantin 400 mg. at night and that he had been treated for seizures. Plaintiff advised Nurse Williams he was under the care of Dr. Stanley Barnes and his family would bring him his medication on April 2, 2012. The jail physician, Dr. McWhorter, entered a verbal order that Plaintiff receive Dilantin 400 mg. at night. Medical personnel also sent Dr. Barnes an authorization for release of medical information to obtain a list of Plaintiff's current medications along with his diagnoses and date of last visit.  Dr. Barnes' office responded on April 12, 2012, stating that they had not seen Plaintiff in two years and indicating that he had not had any seizures during that time. Based on the information received from Dr. Barne's office, Dr. McWhorter reduced Plaintiff's Dilantin dosage to 300 mg. On April 14, 2012, Nurse Williams conducted a history and physical of Plaintiff and noted his history of seizures and teeth problems. She also added Plaintiff to the chronic care list in order to monitor his seizure issue regularly. *Doc. No. 26, Cain Affidavit and Exh. A, Williams, and McWhorter Affidavits.*

check. Plaintiff's Dilantin level was drawn again on April 24, 2012, and April 30, 2012, and, while still low, it had increased both times. Dr. McWhorter increased Plaintiff's Dilantin dosage on April 30, 2012, from 300 mg. to 400 mg. at night. Plaintiff's Dilantin level was drawn on May 4, 2012, and it had increased to within normal limits. On June 7, 2012, Plaintiff's Dilantin level was drawn and his level had increased again to well within normal limits. *Doc. No. 26, Cain Affidavit, Exh. A*.

Plaintiff argues that Sgt. Blue demonstrated medical negligence by failing to call 911 when Plaintiff had his seizure. Although Nurse Cain instructed Sgt. Blue to monitor Plaintiff's condition, Plaintiff maintains that Sgt. Blue lacked medical training and, therefore, was not qualified to monitor Plaintiff from a medical perspective. *Doc. No. 28.*

Sgt. Blue admits that he has no medical training. He relied on the professional medical opinion of Nurse Cain, in addition to his own observations of Plaintiff, regarding the incident in question. *See Williams v. Limestone County, Alabama*, 198 F. App'x 893, 897 (11th Cir. 2006)(supervisory correctional officers entitled to rely on judgment of medical professionals). Sgt. Blue inquired of Nurse Cain whether he should call 911, and the nurse instructed him to monitor Plaintiff's condition through the night and to alert her if his condition did not continue to improve and/or if he suffered another seizure. Sgt. Blue complied with the instructions received from medical personnel. Plaintiff remained stable following his early morning seizure. Medical personnel examined him later that day and referred him to Dr. McWhorter, who entered orders directing checks of his Dilantin level.

*Doc. No. 25, Blue Affidavit, Doc. No. 26, Cain Affidavit and Exh. A, McWhorter Affidavit.*

No evidence exists tending to show that any named defendant demonstrated deliberate indifference toward Plaintiff's medical needs by intentionally or deliberately delaying his receipt of necessary medical treatment or by interfering with his ability to access such treatment. The undisputed records demonstrate that Sgt. Blue notified Nurse Cain within minutes of the onset of Plaintiff's seizure. He followed her instructions to monitor Plaintiff's condition through the evening and alert her to any deterioration of his condition or subsequent seizure episode. Based on the information provided to Nurse Cain by Sgt. Blue, in accordance with her medical experience and professional judgment, Nurse Cain did not deem it necessary to seek further emergency medical treatment for Plaintiff. Even if, as Plaintiff suggests, Sgt. Blue acted negligently, such negligence is not sufficient to constitute an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-07. The treatment Plaintiff received from Sgt. Blue was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). In addition, Plaintiff presents no evidence which indicates that either Sgt. Blue or Nurse Cain knew that the manner in which they provided treatment created a substantial risk to his health and that, with this knowledge, they consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that any named defendant acted with deliberate indifference to Plaintiff's medical needs.

To the extent that Plaintiff's allegations may be considered to claim that he should have received a different mode of treatment, this assertion, without more, in light of the undisputed facts, does not amount to deliberate indifference. *Waldrop*, 871 F.2d at 1033; *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) To the extent that Plaintiff relies on his dissatisfaction with the medical treatment he received as a basis for relief, the case presents "'a classic example of a matter for medical judgment' and, therefore, not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) quoting *Estelle*, 429 U.S. at 107.

The record before this court contains no evidence indicating Defendants acted with deliberate indifference to Plaintiff' serious medical needs. Consequently, summary judgment is due to be granted in their favor.

## C. Defendants' Alternative Exhaustion Argument

Defendants alternatively argue that this case may be dismissed because Plaintiff failed to exhaust the administrative remedy provided at the Covington County Jail regarding the subject matter of the instant complaint prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *See Doc. Nos. 25, 26*. "When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and, if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'

14

*Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant,* 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (citing *Bryant,* 530 F.3d at 1373–74, 1376)." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 Fed.Appx. 364, 366 (11th Cir. 2012). Defendants bear the burden of proof during this second step. *Turner*, 541 F.3d at 1082.

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325

15

(11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).  Moreover, "the

PLRA exhaustion requirement requires ***proper exhaustion***."  *Woodford*, 548 U.S. at 93,

126 S.Ct. at 2387 (emphasis added).  "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules [as a precondition to filing suit in

federal court] because no adjudicative system can function effectively without imposing

some orderly structure on the courts of its proceedings....  Construing § 1997e(a) to require

proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary]

interpretation [allowing an inmate to bring suit in federal court once administrative

remedies are no longer available] would turn that provision into a largely useless

appendage."  548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387.  The Court reasoned that

because proper exhaustion of administrative remedies is necessary an inmate cannot

"satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely

or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively

bypassing the administrative process simply by waiting until the grievance procedure is no

longer available to her.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418

F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns

the administrative process until it is no longer available fails to satisfy the exhaustion

requirement of the PLRA).

     The record establishes that the Covington County Jail provides a grievance

procedure for inmate complaints. *Doc. No. 25, Blue and Hughes Affidavits,  Exhs. B, C; Doc. No. 26* at 12-13; *Doc. No. 29, Meeks Affidavit*.  Defendants Blue, Hughes, and Meeks [collectively "the county defendants"] state that when an inmate is booked into the Covington County Jail he or she receives a copy of the Inmate Handbook containing the grievance policy and procedure.  The county defendants further state a more detailed grievance policy is also posted in each cell block.  The relevant portion of the grievance procedure in the inmate handbook provides:

**Officer Grievances**

If at anytime you feel that an officer has mistreated you, or implemented an excessive punishment, you are encouraged to fill out a grievance on that officer. The Jail Administrator will review the complaint and, if needed, discuss the problem with you. In any case we will try to resolve the problem in a timely manner.

*Doc. No. 25, Exh. B*.

The court granted Plaintiff an opportunity to respond to the exhaustion argument made by Defendants in their special reports. *Doc. No. 27*.  In his response, Plaintiff states that his claims are not subject to the Prison Litigation Reform Act and that he could not begin or file the grievance procedure regarding the incident about which he complains because he could not foresee that it would happen.  *Doc. No. 28*.  These arguments are foreclosed by the Supreme Court's opinions in *Booth*, *Porter* and *Ngo*, *supra*. Plaintiff goes on to dispute the county defendants' contention that inmates are given a copy of the inmate

handbook containing the grievance policy and procedure and contends that the "more detailed grievance policy" referenced by the county defendants was not provided in the cellblock until more than a month after he filed his complaint. *Doc. No. 28*.   Although the latter argument asserted by Plaintiff conflicts with Defendants' allegations, Plaintiff's contention that he was unaware of the jail's administrative remedy process is assumed to be true for purposes of this Recommendation. *Turner v. Burnside*, *supra*.

The court turns to the second *Turner* step, at which Defendants bear the burden of establishing a lack of exhaustion. In addition to the excerpt  above regarding the grievance policy set out in the inmate handbook, the county defendants submitted a copy of Policy Number E-401, a policy and procedure directive of the Covington County Jail pertaining to inmate grievances. Policy Number E-401 is not included or referenced in the excerpt of the inmate handbook. Policy Number E-401 contemplates the use of a "grievance form" that is provided "upon request." Completed grievance forms are to be delivered to the jail administrator or another member of the jail staff "who has been designated to respond to the grievance."  The decision of the jail administrator or his designee may be appealed to the Sheriff, and appeals must be filed within 72 hours of receipt of the grievance response/decision.  *Doc. No. 25, Exh. C.*

Even if Plaintiff received a copy of the inmate handbook, it  is not clear that he would have known he could request a grievance form and/or that the jail administrator's or his designee's decision concerning the grievance could or should be appealed. Only the policy

18

directive contains the details regarding the process involved in filing an inmate grievance. It is also not clear from the evidence whether the "more detailed grievance policy" referenced by the county defendants in their affidavits is, in fact, the same document as Policy Number E-401 submitted in support of their dispositive motion.  Further, the policy set forth in the inmate handbook only encouraged inmates to fill out a grievance if they believed they had been mistreated by an officer. The jail administrator would then "review the complaint, and, if needed, discuss the problem with [the inmate]." *See In re Bayside Prison Litigation,* 190 F. Supp.2d 755, 771–72 (D.N.J. 2002) (complaint procedure described in handbook could not be considered an administrative remedy for purposes of PLRA's exhaustion requirement where "handbook creates the clear impression that the use of the [ ] grievance procedure is optional not mandatory," and the described grievance process is not expeditious "in that it did not require administrators to respond to complaints ... in any specific time period.").

An administrative remedy is not "available" if "an inmate does not know about, and cannot discover through reasonable effort . . . remedies or requirements for remedies ... by the time they are needed." *Goebert v. Lee County,* 510 F.3d 1312, 1322 (11th Cir. 2007) (ruling that an inmate who did not know that she should or could have appealed the denial of medical treatment exhausted her administrative remedies by filing a complaint).  On this record, the court finds that Defendants failed to meet their burden of demonstrating that an administrative grievance system was available to Plaintiff during his incarceration at the Covington County Jail regarding the claims in the complaint. The court, therefore, concludes

that Plaintiff was not required to exhaust the jail's administrative remedies prior to filing suit and dismissal on this basis is not appropriate.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment filed by Defendants (*Doc. Nos. 25, 26*) be GRANTED;

2.  Judgment be GRANTED in favor of Defendants and against Plaintiff;

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that **on or before June 16, 2014**, the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar a party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of June, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE